ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT, ET AL. *v.*
WILLIAM F. MOFFETT ET AL.

Superior Court                    Judicial District of        File No. CV97 0575719S
                                  Hartford

Memorandum filed April 19, 1999*

*Procedural History*

*Richard T. Sponzo*, assistant attorney general, for the plaintiff.

*Richard Blumenthal*, attorney general, and *Thadd A. Gnocchi* and *Charles A. Overend*, assistant attorneys general, for the defendants.

MCWEENY, J. The plaintiff administrator, Unemployment Compensation Act (administrator), appeals from the decision of the intervening defendant employment security appeals division board of review (board) determining that a claimant cannot be disqualified from receiving unemployment compensation benefits for wilful misconduct for stealing $25 or less of property or services.

The issue presently before the court in these seven consolidated appeals[1] is whether persons who have lost their jobs for larceny of less than $25 worth of property are disqualified from receiving unemployment compensation benefits under General Statutes § 31-236 (a) (2) (B). The court finds that pursuant to § 31-236 (a) (2) (B), an employee who steals property valued at $25 or less may not be disqualified for larceny but may be disqualified for wilful misconduct.

---

* Affirmed. *Administrator, Unemployment Compensation Act* v. *Moffett*, 60 Conn. App. 746, 760 A.2d 1277 (2000).

[1] On January 5, 1998, the court, *Berger, J.*, consolidated these seven appeals.

The administrator is specifically authorized by General Statutes § 31-249b to appeal from the board's final decision. The board is authorized pursuant to General Statutes § 31-249c to appear as a party in any proceeding before a reviewing court. Pursuant to Practice Book § 22-9, "[s]uch appeals are heard by the court upon the certified copy of the record filed by the board."[2]

The record in each case establishes that each of the claimants was discharged from their employment due to the theft of property with a value of $25 or less. Christina J. Bliven, a cashier at Staples, Inc., stole a lock worth $24.99. Christopher Jessup stole a pound of pastrami valued at $9.98 from his employer, Crown Super Market. Karen A. Solek, a clerk at Waldbaum Food Mart, stole $9.82 worth of groceries. Michael S. Kinlock, a dietary assistant at Fairfield Manor, stole food items from his employer's kitchen worth less than $25. Ronnie L. Leaks, a line cook at Chili's Grill and Bar, stole steaks worth $18. William F. Moffett stole

[2] Practice Book § 22-9 provides: "(a) Such appeals are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses. In addition to rendering judgment on the appeal, the court may order the board to remand the case to a referee for any further proceedings deemed necessary by the court. The court may remand the case to the board for proceedings de novo, or for further proceedings on the record, or for such limited purposes as the court may prescribe. The court may retain jurisdiction by ordering a return to the court of the proceedings conducted in accordance with the order of the court, or may order final disposition. A party aggrieved by a final disposition made in compliance with an order of the superior court may, by the filing of an appropriate motion, request the court to review the disposition of the case.

"(b) Corrections by the court of the board's finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence."

less than $25 worth of beer from his employer, Hartford Distributors, Inc. Linda D. Wilson, a sales clerk at Follett College Stores Corporation, Inc., stole $5 worth of merchandise.

Such single incidents of petty larceny would not have constituted grounds for disqualification prior to the passage of Public Acts 1995, No. 95-323, which amended the disqualification statute, § 31-236. Prior to the 1995 amendment, disqualification would occur for "felonious conduct," larceny of currency or property whose value exceeds $25 or repeated wilful misconduct. Thus, under the latter scenario, single incidents of theft would not disqualify a fired employee from receiving unemployment compensation benefits.

Public Act 95-323, however, deleted the reference to "repeated" wilful misconduct and redefined "wilful misconduct" as "deliberate misconduct in wilful disregard of the employer's interest, or a *single knowing* violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied. . . ." (Emphasis added.) Id., now codified as General Statutes § 31-236 (a).

The position of the board is that petty larceny of property valued at $25 or less cannot constitute disqualification because of the plain language of our Unemployment Compensation Act, General Statutes § 31-222 et seq., compels us to maintain the validity of the larceny provision and to find that a claimant cannot be disqualified under the wilful misconduct provision for stealing $25 or less of property or services.

The court rejects such construction of § 31-236 and finds it inconsistent with the clear language and structure of the statute.

Section 31-236 of the General Statutes, entitled "Disqualifications," sets forth in great detail disqualifying

circumstances for unemployment compensation. Subsection (a) (1) of that statute deals with the applicant's unavailability for work. Subsection (a) (2) addresses the disqualifying termination scenarios. Under subsection (a) (2) (B), the disqualifying grounds are discharge for felonious conduct, for larceny of property or services valued at more than $25, larceny of any amount of currency, wilful misconduct in the course of employment, just cause or participation in an illegal strike.[3]

The issue here is whether a theft of $25 or less of property or services, clearly not a disqualifying larceny, can constitute a disqualifying act of wilful misconduct. The answer must be yes. Prior to Public Act 95-323, repeated petty thefts could amount to repeated wilful misconduct. See *Cone* v. *Duncaster, Inc.*, board case No. 1195-86-BP (November 6, 1986). Under the current provision, similarly repeated thefts would most clearly constitute wilful misconduct.

The obvious intent of the larceny provision is to lessen the penalty for a fired employee who has stolen something of small value. This, however, does not elevate such thefts to protected activity for which an employee would never be disqualified.

A somewhat analogous statutory structure and result is addressed in *Tucker* v. *Board of Education*, 177 Conn. 572, 418 A.2d 933 (1979). In that case, a tenured teacher who took a leave of absence faced termination of her employment. General Statutes § 10-151 (b), now (d), set forth the grounds for terminating a teachers contract

---

[3] General Statutes § 31-236 (a) (2) provides in relevant part: "An individual shall be ineligible for benefits . . . (B) if, in the opinion of the administrator, he has been discharged or suspended for felonious conduct, conduct constituting larceny of property or service, the value of which exceeds twenty-five dollars, or larceny of currency, regardless of the value of such currency, wilful misconduct in the course of his employment, just cause, or participation in an illegal strike as determined by state or federal laws or regulations . . . ."

of employment. The six grounds listed in that statute included two relevant to the proceedings against the plaintiff in *Tucker*, "insubordination against reasonable rules of the board of education," and for "other due and sufficient cause." General Statutes § 10-151 (b) (2) and (6), now (d) (2) and (6); *Tucker* v. *Board of Education*, supra, 575–76.

The Supreme Court agreed with the trial court that the defendant board of education's denial of the leave request was a decision, not a "rule" of the board. *Tucker* v. *Board of Education*, supra, 177 Conn. 575. Thus, the contract could not be terminated for " 'insubordination against reasonable rules of the board of education.' " Id., 576. The defendant, however, successfully argued on appeal that the insubordination against its decision would constitute valid grounds under "other due and sufficient cause." General Statutes § 10-151 (b) (6), now (d) (6). "The board contend[ed] that insubordination in and of itself constitutes 'other due and sufficient cause' for the termination of the plaintiff's contract and is a valid statutory basis for dismissal under the provisions of § 10-151 (b) (6) [now (d) (6)]. We agree with the board's contention." *Tucker* v. *Board of Education*, supra, 177 Conn. 577; see also *Tucker* v. *Board of Education*, 190 Conn. 748, 750, 462 A.2d 385 (1983) (after remand, statutory analysis in *Tucker* v. *Board of Education*, supra, 177 Conn. 572, reviewed, approved).

Similar to the Teacher Tenure Act, § 10-151, the Unemployment Compensation Act, § 31-236, contains nothing to exclude from a general ground behavior of the character, if not the severity, of a separate, more specific ground. Insubordination, though not amounting to insubordination against reasonable rules "did constitute other due and sufficient cause." In these cases, larcenies though not meeting the ground of disqualification for larceny of over $25 value, could constitute "wilful misconduct."

This construction of § 31-236 is buttressed by consideration of the revised "wilful misconduct" definition from Public Act 95-323. The instances of petty larceny would have to be considered "deliberate misconduct in wilful disregard of the employer's interest, or a single knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied. General Statutes § 31-236 (a).

The facts certified in *Gilliard* v. *Hartford Club*, board case No. 729-BR-96 (May 13. 1996), would meet the statutory wilful misconduct definition.[4] In that case, the employee was observed concealing food items on her person, then placing them in her locker. The items were then found in the locker, and no explanation was offered by the employee. The employer's policy was to immediately dismiss any employee for stealing, regardless of the value of the items. The employee was provided a copy of the rule in writing. Other employees

---

[4] The facts certified in *Gilliard* are as follows: "The claimant was employed as a part-time assistant server for the Hartford Club (hereinafter referred to as the employer) from September 22, 1993, until her discharge on November 4, 1995. Upon the filing of her original claim for benefits, the Administrator found the claimant eligible for benefits by a decision issued on December 20, 1995. The employer filed a timely appeal to the Appeals Referee. The Referee conducted a de novo hearing, at which only the employer appeared. The relevant findings of fact of this case are as follows: On November 4, 1995, the claimant's coworker reported to the kitchen storage area, concealed [items] on [her] person, and placed them in her locker. Based on the coworker's allegations, the employer's manager and one of its senior staff immediately began an investigation, which included an inspection of the claimant's locker. They discovered in the claimant's locker an unopened one-half gallon of milk and a small container of orange juice. The value of the food items was less than five dollars. When confronted, the claimant did not offer the employer any explanation for concealing the milk and orange juice in her locker. She was immediately discharged pursuant to the employer's policy, which provides that stealing from the employer is grounds for immediate dismissal regardless of the value of the item(s) stolen. The claimant was aware of the rule because it was contained in a package of written material that was given to the claimant upon hire. The employer had previously discharged other employees for violating its rule against stealing."

had been discharged for violating the employer's rule against stealing.

The wilful misconduct inquiry references criteria different from the larceny provision. A demonstrated larceny of property valued at over $25 disqualifies a claimant. Wilful misconduct requires not only proof of the larceny, but the existence of a reasonable and uniformly enforced rule or policy. If minor pilferage had been tolerated in the past, then an employee for petty theft might not be disqualified. Such a defense would not seem to lie for the larceny disqualification. See *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 6, 675 A.2d 845 (1996) (statute must be read as whole and interpreted so as to give effect to all its provisions); *Pintavalle* v. *Valkanos*, 216 Conn. 412, 581 A.2d 1050 (1990) (same); see also *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 116, 584 A.2d 1172 (1991) (statute is construed as whole and subsections read concurrently so that reasonable overall interpretation reached).

Contrary to the board's claim, the administrator's position does not read out or by implication repeal the larceny disqualification of § 31-236. It remains a valid ground for automatic disqualification.

"In matters of statutory interpretation, we are guided by well established principles, paramount among which is the principle that [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connecticut Assn. of Not-for-Profit Providers for the Aging* v.

*Dept. of Social Services*, 244 Conn. 378, 391, 709 A.2d 1116 (1998); *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995).

The intent of Public Act 95-323 was to broaden the scope of disqualification, especially with respect to the nature of the termination. Petty larcenies that were not severe enough to invoke the larceny disqualification may be enough to invoke the wilful misconduct disqualification. The elimination of the "repeated" criteria from the "wilful misconduct" disqualification would logically affect the consequence of a single petty larceny. This is further evidenced by the revised definition of wilful misconduct. The requirement of reasonable and uniform application would seem to be the focus of the petty larceny cases. The larceny disqualification thus retains its vitality. An employer seeking to contest the qualification for compensation of an employee terminated for theft of $26 worth of property need only document the theft. If the property was worth $25 or less, the issue would be wilful misconduct. The burden of proof would include not only the theft, but a reasonable publicized and uniformly enforced policy, reasonably applied.

In its decision, the board ignores this construction of the statute and insists that the larceny provision must be amended to accomplish a disqualification for a larceny of $25 or less. The history of the larceny disqualification also is informative as to legislative intent. The original larceny disqualification, Public Acts 1981, No. 81-318, § 1, referenced larceny in the third degree. General Statutes § 53a-124, larceny in the third degree, was a class B misdemeanor until such act was amended in 1982 by Public Act 1982, No. 82-271, § 3. In 1985, Public Acts 1985, No. 85-26 substituted $50 larceny for larceny in the third degree. In 1993, Public Acts 1993, No. 93-243, § 5, decreased the amount of the

larceny disqualification from $50 to $25. In the court's view, Public Act 95-323 is a continuation of a legislative intent to further restrict unemployment compensation for cause related terminations. Now, a single incident of petty larceny may meet the standard of a wilful misconduct disqualification.

The board seeks in this review judicial deference to its statutory construction. These cases represent the board's initial application of the Public Act 95-323 revision. The interpretation and construction of a statute is uniquely the function of courts, not administrative agencies. *Bezzini* v. *Dept. of Social Services*, 49 Conn. App. 432, 436, 715 A.2d 791 (1998); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 57–58, 591 A.2d 1231 (1991); *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, supra, 244 Conn. 389.

For the reasons set forth above, the court finds the issues for the administrator. The appeal is sustained and the case is remanded to the board to vacate its decision.